IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT MORRIS ANTHONY, FY-4052, )
    Petitioner, )
     )
    v. ) 2:10-cv-153
     )
COMMONWEALTH OF PENNSYVANIA, et al., )
    Respondents. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Robert Morris Anthony for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists that a certificate of appealability be denied.

II. Report:

Robert Morris Anthony, an inmate at the State Correctional Institution – Forest has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Anthony is presently serving a life sentence imposed following his conviction, by the court, of second degree murder, robbery of a motor vehicle, receiving stolen property, carrying a firearm without a license, robbery and criminal conspiracy at Nos. CC 200216531, 200217169 and 200312158, in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on August 31, 2004.[1]

Counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) in the Superior Court alleging as ground for relief:

    1. The Commonwealth selectively prosecuted the appellant.

---

[1] See: Petition at ¶¶ 1-6. The Commonwealth notes in its answer that the petitioner entered a guilty plea to other charges and was sentenced to life imprisonment on the second degree murder charge; no further penalty was imposed on the remaining informations challenged here but petitioner did receive concurrent sentences on other charges to which he had entered a guilty plea.

1

2. The evidence presented at trial was insufficient to support a second degree homicide conviction in this matter and equally insufficient to support a conviction for criminal conspiracy.[2]

On December 1, 2006, the judgment of sentence was affirmed.[3]

A pro se petition for allowance of appeal by the Pennsylvania Supreme Court was filed in which the petitioner contended he was entitled to relief on the following grounds:

1. Did the Superior Court err in rejection [of] petitioner's claim that appellant was selectively prosecuted for his crimes in violation of his Constitutional rights?

2. Did the Superior Court err in rejection [of] petition's claim that the evidence presented at trial was insufficient to support a second degree homicide conviction in this matter and equally insufficient to support a conviction for criminal conspiracy?[4]

Leave to appeal was denied on June 14, 2007.[5]

On December 4, 2007, Anthony filed a post-conviction petition and subsequently filed an amended petition. Relief was denied on June 17, 2008. An appeal was taken to the Superior Court in which the questions presented were

1. Did the trial court err in denying appellant's PCRA petition without a hearing since trial counsel was ineffective for failing to investigate key Commonwealth witness Clinton Peterson's criminal history, including his pending case and the possible deal he received prior to and in exchange for testifying against appellant, as well as possible favorable treatment for a probation violation at the same case?

2. Did the trial court err in denying appellant's PCRA petition without a hearing since the Commonwealth committed a Brady violation by not informing appellant or his trial counsel of the pending cases against Clinton Peterson?[6]

On July 20, 2009 the denial of post-conviction relief was affirmed.[7]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which these same issues were presented.[8] On December 23, 2009, leave to appeal was denied.[9]

Anthony now comes before this Court and alleges he is entitled to relief on the following grounds:

---

[2] See: Exhibit 24 to the answer of the Commonwealth at pp. 297, 298.
[3] See: Exhibit 28 to the answer of the Commonwealth at pp.333-343.
[4] See: Exhibit 30 to the answer of the Commonwealth at p.351.
[5] See: Exhibit 31 to the answer of the Commonwealth at p. 370.
[6] See: Exhibit 41 to the answer of the Commonwealth at p.491.
[7] See: Exhibit 43 to the answer of the Commonwealth at pp.543-545.
[8] See: Exhibit 45 to the answer of the Commonwealth at p.550.
[9] See: Exhibit 46 to the answer of the Commonwealth at p.585.

1. Trial counsel was ineffective for failing to investigate key Commonwealth witness Clinton Peterson's criminal history, including his pending case and the possible deal he received prior to and in exchange for testifying against appellant as well as possible favorable treatment for a probation violation at the same case.

2. The Commonwealth of Pennsylvania committed a Brady violation by not informing appellant or his trial counsel of the pending case against Clinton Peterson.

3. The evidence presented at trial was insufficient to support a second degree homicide conviction in this matter and equally insufficient to support a conviction for criminal conspiracy.[10]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

---

[10] See: Petition at pp.17-18.

In construing § 2254(d)(1), the Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, it is clear that the petitioner raised his first and second issues in his post-conviction appeals and the third issue in his direct appeal. However, the Commonwealth notes that petitioner's first and third issues were not presented to the state courts as federal constitutional claims and for this reason his state court remedies have not been exhausted, and his second issue, i.e., the alleged <u>Brady</u> violation has been presented to the state courts as a federal issue and for this reason is the only issue on which Anthony has exhausted his state court remedies.

We observe that in order to have exhausted his state court remedies, a petitioner must specifically present his federal claims in the state court proceedings. <u>Baldwin v. Reese</u>, 541 U.S.

27 (2004); Greene v. Palkovich, 606 F.3d 85,93 (3d Cir.2010). In his direct appeal, Anthony challenged the sufficiency of the evidence but did so only as a matter of state law.[11] However, since he can no longer return to state court to raise this issue, and no good cause has been demonstrated for failing to do so, he has defaulted his state court remedies and this matter is not properly before this Court. Coleman v. Thompson, 501 U.S. 722 (1991).

In the post-conviction proceedings, Anthony challenged the ineffectiveness of counsel for failing to investigate the criminal history of prosecution witness Peterson on both federal and state law bases, and for this reason has exhausted the available state court remedies.[12] His second issue, that is, the alleged Brady violation was raised as a federal issue and for this reason it is properly before this Court in the present petition.

The background to this prosecution is set forth in the December 1, 2006 Memorandum of the Superior Court:

> Shannon Cleary testified that at approximately 11:45 p.m. on October 21, 2002, she was walking to a convenience store with her daughter and saw two black men, one tall and one short, arguing with a white man standing by a Chevrolet Lumina. The taller of the two black men was yelling and demanding money. Seig VanAllen, who lived across the street from where the incident took place, reported to the police that he heard a scuffle and observed the taller of the two black men flee the scene in the victim's car.
>
> Clinton Peterson ("Peterson") testified that he was the second black male present on the street the day of the shooting. Peterson and appellant were in the apartment of Derriah Baker ("Baker") the day of the shooting, and appellant stated that he needed money. Peterson stated that Baker explained she knew a "white dude" who "liked her" and would give her money. Peterson testified that he had heard a conversation about appellant possibly robbing the victim.
>
> Subsequently, the victim arrived to see Baker. Peterson and appellant left but later returned and found the victim sitting in his car. Peterson testified that appellant ran up to him and said "hold up" a fight ensued and the victim blew the horn of his car. Peterson then heard a gunshot and saw the appellant had a gun. Peterson stated that he heard the car leave the scene, but he did not observe it drive away.
>
> Baker also testified for the Commonwealth; she reported that on the day in question, appellant and Peterson came to her apartment. When appellant asked her where he could get money, she told him she knew a white man, the victim, that had access to money. Baker called the victim and asked him to bring her some milk and a "couple dollars." At this point, appellant indicated to Peterson and Baker he was going to rob the victim.

---

[11] See: Exhibit 24 at pp.298-299.
[12] We note that the state court basis for gauging the alleged ineffectiveness of counsel is comparable to the federal basis.

When the victim arrived, Baker went outside to speak with him. She then saw appellant and Peterson approach the victim; appellant was holding a gun. Baker stated that appellant instructed the victim to start the car. The victim, however, blew the horn of the car and appellant fired the gun. Baker testified that appellant "yanked [the victim] out of the car and threw him on the ground" before driving away.

On October 21, 2002, Officer Steven Kober was called to a shooting at the intersection of 14th and Middle Streets in the Borough of Sharpsburg. Upon arrival, he found Paulo Pusic ("the victim") lying on the sidewalk; the officer called emergency medical services. The victim died as a result of a gunshot wound to his torso. At approximately 3:40 a.m., a police officer in the Borough of Duquesne observed the Chevrolet Lumina and notified the county police. Appellant was subsequently arrested. (Internal citations omitted).[13]

The first issue raised is that trial counsel was ineffective for failing to fully investigate the criminal history of prosecution witness Clinton Peterson. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The record discloses that Peterson was charged in a criminal information with one count of violation of the controlled substances act and possession with intent to deliver at No. CC200216277 in the Court of Common Pleas of Allegheny County. He entered a

---

[13] See: Exhibit 28 at pp.333-335.

guilty plea to the charges and on April 28, 2003 was sentenced to a one year period of imprisonment. On January 24, 2004, he appeared before the court for a probation violation hearing. No further penalty was imposed and the case against Peterson was closed.[14]

The petitioner's trial on the instant charges commenced on June 7, 2004. At that time no further charges were pending against Peterson, and other than his unsupported assertions, the petitioner has not made a showing of any manner in which Peterson received consideration from the Commonwealth in exchange for his testimony against Anthony. As the trial court concluded, this argument is meritless in that

> there does not exist any reasonable argument that the Commonwealth offered Peterson leniency in exchange for his testimony against the Defendant – had they done so, Peterson's case would have been continued until after the Defendant's trial so his cooperation could be assured. The Defendant's mere speculation that Peterson was given leniency in exchange for his testimony is not supported by the record and does not form a basis [for relief].[15]

We observe that the factual findings of the state courts are entitled to a presumption of correctness. 28 U.S.C. 2254(e)(1); Roland v. Vaughn, 445 F.3d 671 (3d Cir.2006). Because this issue is totally devoid of any merit, counsel cannot be deemed ineffective for failing to raise it.

The second issue which the petitioner properly raises before this Court is that a Brady violation occurred when the prosecution failed to inform the defense of the pending criminal charges against its witness, Clinton Peterson. In Brady v. Maryland, 373 U.S. 83 (1963), the Court held that a violation of constitutional proportion occurs when the prosecution fails to disclose exculpatory evidence to the defense. As more fully set forth above, other than the petitioner's idle speculation, there is no evidence that the Commonwealth withheld exculpatory evidence from the defense regarding the possible favorable treatment Peterson hoped to receive in exchange for his testimony against Anthony. Rather, the record fails to disclose that any such evidence existed in that the case against Peterson was closed almost six months prior to the petitioner's prosecution. Thus, no Brady violation could have occurred and this claim is likewise meritless.

---

[14] See: Exhibits 49 and 50 to the answer at pp.596-597.
[15] See: Exhibit 39 at p.480.

7

The petitioner's third issue, which was procedurally defaulted, is that the trial evidence was insufficient to support a second degree homicide conviction or a conviction for criminal conspiracy. Although procedurally defaulted, this issue may be examined on the merits. 28 U.S.C. 2254(b)(2).

Under Pennsylvania law, second degree murder is defined as a homicide "committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."[16] While criminal conspiracy is defined as, if with the intent to commit a crime the actor agrees with another person to engage in conduct which constitutes a crime, that person is guilty of criminal conspiracy.[17]

In reviewing a claim of insufficiency of the evidence to support the conviction, federal courts must determine whether the record evidence is sufficient to reasonably support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). From the recitation of the evidence of record set forth above, it is clear that the evidence presented was more than adequate to support a determination of guilt beyond a reasonable doubt. For this reason, this claim likewise does not provide a basis for relief.

Because the petitioner's allegations here do not demonstrate that his conviction was secured in a manner contrary to or involved an unreasonable application of Supreme Court law, the petition is meritless.

Accordingly, it is recommended that the petition of Robert Morris Anthony for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists that a certificate of appealability be denied. Any party desiring to file objections to the report and recommendation must do so within fourteen (14) days of its date. Failure to do so will be construed as a waiver of the right to file objections.

Respectfully submitted,
s/ Robert C. Mitchell

Dated: November 18, 2010  United States Magistrate Judge

---

[16] 18 Pa.C.S.A. 2502(b).
[17] 18 Pa.C.S.A. 903(a).